**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DOLLAREATHA EDWARDS,

Plaintiff,

-against-

ROBERT WILKIE, Secretary of the Department of Veterans Affairs

Defendant.

16-CV-8031 (LTS) (OTW)

**OPINION & ORDER**

**ONA T. WANG, United States Magistrate Judge:**

Plaintiff filed this motion for sanctions pursuant to Fed. R. Civ. P. 30 and 28 U.S.C. § 1927 on June 17, 2019. (ECF 84). As a sanction for defense counsel's alleged conduct at the depositions of Jodie Jackson and Christopher Walls,[1] Plaintiff seeks an order "to re-open discovery for the limited basis to serve Defendants her requests for admissions and to conduct very narrow ESI searches and production." For the following reasons, Plaintiff's motion for sanctions is **DENIED**.

## I. BACKGROUND

### A. Relevant Procedural History

Plaintiff filed this employment discrimination action on October 13, 2016, alleging, *inter alia*, that Jackson and Walls discriminated against Plaintiff based on her disability (asthma and rhinitis) and gender, and that they and others "intentionally created a hostile work environment

[1] All other discovery has been closed since September 10, 2018; on October 4, 2018, the Court extended fact discovery to November 9, 2018 for the sole purpose of completing the Jackson and Walls depositions, which had been scheduled and re-scheduled since the summer of 2018. (ECF 55).

rife with retaliation and harassment that forced her to retire on disability." (ECF 1). Judge Swain's initial scheduling order, entered on October 17, 2017, provided for fact discovery to be completed by March 26, 2018, and expert discovery to be completed by May 26, 2018. (ECF 29). The parties then received several extensions of fact discovery for various reasons, leading to Judge Swain, entering an amended scheduling order setting new fact and expert discovery deadlines of September 10, 2018 and November 14, 2018, respectively. (ECF 46). On the fact discovery deadline, Plaintiff filed a letter request seeking an additional 60 days to complete discovery, (ECF 47; ECF 48), which Defendant opposed the next day. (ECF 48). This opposition, in turn, led to two additional letters from Plaintiff dated September 12 and 16. (ECF 49; ECF 50). This matter was reassigned and referred to me for general pretrial supervision on September 17, 2018. (ECF 51). On October 4, 2018, I entered a new scheduling order which extended the fact discovery deadline to November 9, 2018, "for the limited purpose of permitting the deposition of Christopher Walls and the continued deposition of Jodie Jackson," and setting an expert discovery end date of November 30, 2018. (ECF 55.) In light of the previous history of the case, Paragraphs 8 and 9 of this scheduling order provided as follows:

> 8. No Adjournment of Deadlines
>
> The deadlines set forth in this Pre-Trial Scheduling Order will not be adjourned except in the Court's discretion upon good cause as shown in a written application signed by counsel, stating whether the other part(ies) consent, and served upon all parties. "Good cause," as used in this paragraph, does not include circumstances within the control of counsel or the client.
>
> 9. Non-Compliance with This Order
>
> In the event that any party fails to comply with this Pre-Trial Scheduling Order, or is not prepared to go forward with trial on the date scheduled, the Court may impose sanctions or take other

> action as appropriate. Such sanctions and action may include assessing costs and attorney's fees, precluding evidence or defenses, dismissing the action, granting judgment by default, and/or other appropriate penalties.

The deadlines contained in ECF 55 came and went, and the case was stayed from December 22, 2018 through January 25, 2019, due to the lapse in federal government funding. (ECF 56; ECF 57). On February 14, 2019, Plaintiff again sought re-opening and extensions of discovery, which ultimately led to yet another scheduling order extending discovery for the sole purpose of completing the Jackson and Walls depositions. (*See* ECF 68). Those depositions were completed on May 15 and 16, 2019, respectively.

B. The Instant Motion

Plaintiff argues that she was denied a fair examination of the deponents, based on the "the sheer volume alone" of the objections, and also due to defense counsel's "coaching" and other allegedly "disrespectful and disruptive" conduct, including one instance of consultation on an "illusory form of privilege" during a pending question during the Walls deposition. (ECF 87 at 8-17.)

Plaintiff argues that monetary sanctions are inadequate because defense counsel work for the federal government, alleging that defense counsel "were fully aware that their conduct may warrant sanctions but since they also are aware that the do not personally pay the costs, and that whatever cost would be negligible to their employer, the government of the United States . . ." [sic]. (ECF 85 at 17). Plaintiff argues, thus, that "re-opening discovery would clearly serve a more substantively punitive purpose." (*Id*. at 18).

For the reasons below, I find that no sanctions – whether monetary or otherwise – are warranted on the record before me.

## II. **DISCUSSION**

### A. Legal Standard

Rule 30(c)(2) of the Federal Rules of Civil Procedure provides that "[a]n objection [during a deposition] must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). "It is noteworthy that the rule stops short of absolutely forbidding any objections whatsoever except those that would be waived unless raised." 8A Charles Alan Wright et al., Federal Practice and Procedure Civil §2113 at 97 (2d ed. 1994); *see* Fed. R. Civ. P. 32(d)(3)(B) (timely and contemporaneous objections necessary for objections to form and relating to matters that "might have been corrected at that time").

Rule 30(d)(2) does not require a showing of bad faith but authorizes sanctions for conduct that "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). "The decision to impose sanctions is at the discretion of the court." *Cordero v. City of New York*, No. 15-CV-3436 (JBW) (CLP), 2017 WL 2116699, at *5 (E.D.N.Y. May 12, 2017) (analyzing sanctions under Rule 30(d)(2)).

Although not every improper objection warrants sanctions, sanctions are appropriate under 28 U.S.C. § 1927 where the attorney's conduct "essentially destroys a deposition." *See Cameron Indus., Inc. v. Mothers Work, Inc.*, No. 06-CV-1999 (BSJ) (HBP), 2007 WL 1649856, at *5

(S.D.N.Y. June 6, 2007) (quoting *Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc*., No. 96-CV-0799 (AGS) (JCF), 1997 WL 482518, at *8 (S.D.N.Y. Aug. 21, 1997)). An award of sanctions under 28 U.S.C. § 1927 differs from an award under Rule 30(d)(2), however, because sanctions "under § 1927 require[ ] a clear showing of bad faith . . . 'when the attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.'" *Phillips v. Mfrs. Hanover Trust Co*., No. 92-cv-8527 (KTD) (JCF), 1994 WL 116078 at *2 (S.D.N.Y. Mar. 29, 1994) (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986), *cert. denied,* 480 U.S. 918 (1987)).

B. Analysis

Plaintiff argues that defense counsel's frequent objections at the continuation of Ms. Jackson's deposition were not for a proper purpose, but rather "as a means to coach their witnesses and to frustrate the flow of the deposition." (ECF 85 at 9). At Mr. Walls's deposition, Plaintiff asserts that defense counsel again objected too frequently, engaged in colloquies intended to coach the witness, repeatedly objected to Mr. Walls's personal medical condition, and once removed Mr. Walls from the deposition "during a pending question" to consult on a privilege issue. (ECF 85, *passim*).

During Ms. Jackson's deposition, Plaintiff asserts that Defendant "raised objections approximately 80% of the time [sic]."[2] (ECF 85 at 2). Further, Plaintiff alleges that during Mr. Walls's deposition, defense counsel "made objections or spoke at least 531 times." (ECF 85 at

[2] Upon a further review of the deposition and Plaintiff's memorandum of law, the word "objection" appears on 133 out of 167 pages of Ms. Jackson's transcript, or on 79.6% of the pages. (ECF 85 at 9). It is not the case that defense counsel spent almost "80% of the time" of the deposition making objections. (*Id*. at 2).

10). Plaintiff asserts, without citing to any case law, that "the sheer volume alone without looking at the context should warrant the imposition of sanctions." (*Id*. at 9).

But context *is* important. Because counsel defending a deposition have an obligation to make timely and contemporaneous objections under Rule 32, awarding sanctions based only on the number of objections would have the perverse effect of rewarding – or at least condoning – confusing and objectionable questions. Thus, "courts in the Second Circuit have declined to impose sanctions based solely on voluminous, unwarranted, and argumentative objections where opposing counsel was not prevented from completing the deposition." *Cordero*, 2017 WL 2116699, at *6, (citing *Phillips*, 1994 WL 116078, at *3 (holding that even when the attorney's conduct "clearly hampered the free flow of the deposition" and was "inappropriate and at times even obnoxious," sanctions did not issue)).

The Court has reviewed the transcripts of Ms. Jackson's and Mr. Walls's depositions and finds that the objections, while numerous, were not inappropriate or unwarranted. The vast majority of the objections were not speaking objections and did not involve colloquy; moreover, defense counsel only instructed Mr. Walls not to answer one time. (ECF 88 at 15-16 (citing ECF 88-2 at 291:5-293:18)).

Most importantly, Plaintiff was able to complete both depositions, and has not identified any material areas she sought to explore that she was prevented from exploring by defense counsel's objections. Even the most contentious areas in each witness' depositions, referenced and discussed by both Plaintiff and Defendant in their briefs, do not rise to the level of sanctionable conduct, whether under Rule 30 or the stricter standard under § 1927.

1. <u>Objections and Colloquy in the Jackson Deposition</u>

In the Jackson deposition, the recurring colloquy occurred around lines of questioning where counsel repeated allegations in the complaint and then asked the witness whether they were aware of or agreed with the allegations. (*See, e.g.*, ECF 88-1 at 199-200).[3] In some instances, counsel simply restated an allegation in the complaint without posing a question. (*See, e.g.*, ECF 88-1 at 221,[4] 326). The other recurring objections involved counsel prefacing questions with a statement, or asking the witness whether she had given particular answers at her previous deposition session. (*See, e.g. id*. at 193-194,[5] 210, 215-217, 230). These questions were properly objectionable as to form; in any event, the witness usually answered the question and the deposition proceeded.

[3] The instances cited here and in reference to the Walls deposition are not intended to be an exhaustive list of the colloquies and objections, but are provided as examples only.

[4] *See, e.g.*, ECF 88-1 at 221:

Q: Now, was there ever a TMS coordinator in the Engineering Division during the time that Ms. Edwards worked under Mr. Walls?
MS. MOHAN: Objection to form.
A: Not that I recall, but most departments have someone who manages TMS.
Q: So there wasn't one at the time that you recall?
A: No, I didn't say that.
Q: At the time you said you didn't recall.
MS. MOHAN: Objection to form.
A: Yes.
Q: Is there a TMS manager now?
A: I don't know.
Q: Ms. Edwards also alleges that she was the IGMIS housing manager.
MS. MOHAN: Objection to form. Is there a question or are you just going to testify?

[5] *See, e.g.*, ECF 88-1 at 193-94:

Q: Now, you did testify that you saw her [Plaintiff] with her son at some point?
A: Correct.
Q: But nothing else stood out outside of the observation?
A: No.
MS. MOHAN: I just want to object, you're repeating the questions from last time. We're just retreading old ground, so I just want to put that objection on the record.

For example, one of the more problematic and lengthy exchanges at Ms. Jackson's deposition is illustrative:

> Q: Now at some point you testified that Ms. Edwards performed additional job functions that she should not have; is that true?
>
> MS. MOHAN: Objection to form.
>
> Q: **At some point, Ms. Edwards basically, like you said, she was an administrative officer at the VA. Did that position exist?**
>
> MS. MOHAN: Objection to form.
>
> A: **I don't know.**
>
> MS. DOUD: The question should just be with a question, it shouldn't be prefaced with information.
>
> MS. HAGAN: I don't think you should explain how I conduct my deposition. It isn't an improper question. To you it's improper, it doesn't mean it is. I think that you're trying to break up the flow of the deposition.
>
> If you have problems with it, that's your problem. But I can ask Ms. Walls, I'm sorry, Ms. Jackson, anything I want to as long as it's relevant. So could you please not interrupt my questioning again.
>
> MS. DOUD: We're allowed to object, and we will continue to do so. The objection is that every question you're asking is prefaced by just speaking on the record. Special, stop.
>
> MS. HAGAN: Don't yell at me. Excuse me, I will call the judge if I have to, because there's no grounds for your objection. You're not stating any basis for the objection. I'm going to ask Ms. Jackson the same question again.
>
> MS. DOUD: I was in the middle of explaining the objection when you interrupted me.
>
> MS. HAGAN: This is a speaking objection and they're prohibited.
>
> Q: I was saying before, the objection is on the record. I'm going to ask the question again and you can answer the question unless directed not to, and if so, we will call the judge. Now, again, **does the administrative officer position exist today at the VA?**
>
> A: **I do not know.**
>
> Q: **Has anyone acted in that capacity, to your knowledge?**
>
> A: **No.**

(ECF 88-1 at 215-17 (emphases added)). Here, notwithstanding considerable colloquy and disagreement among counsel, the questions asked after the objections were clearer, and the witness was able to answer them.

2. Objections and Colloquy in the Walls Deposition

Mr. Walls's deposition was similar. Indeed, there were several objections and colloquy earlier in the Walls deposition, (*see, e.g.* ECF 88-2 at 36, 46, 50, 61, 63, 65, 69), but when Plaintiff's counsel then called the Court concerning the Jackson deposition the previous day,[6] she stated that she did not have any disputes concerning the Walls deposition. (ECF 88-2 at 77 (emphases added)).[7] Throughout the Walls deposition, Plaintiff's counsel also continued her practice of restating allegations in the complaint, which led to numerous warranted objections to form; in

[6] *See* ECF 76.

[7] JUDGE WANG: Stop, this is not the time to be arguing about what happened at the deposition yesterday. You raised these issues in your letter. The Court is considering them. The Court may put you on a briefing schedule because I don't have the benefit of th4e entire transcripts nor do you.

. . .

**Do you have an existing dispute at this moment that concerns the deposition that is proceeding right now?**
MS. HAGAN: **No, I do not.**

any event, the witness answered the questions. (*See, e.g.,* ECF 88-2 at 103-104,[8] 106-107,[9] 123-25, 134,[10] 159-61[11]).

---

[8] Q: Right. Now, Ms. Edwards alleges that you would not meet with her and discuss her performance with her.
MS. DOUD: Objection. That's not a question, Special.
Q: Can you answer?
MS. DOUD: You need to ask him a question for him to answer a question.
MS. HAGAN: I'm noting that counsel is engaging in speaking objections again.
Q: Again, Ms. Edwards is alleging that you refused to meet with her to discuss her performance; is that true?
A: No.

[9] Q: Ms. Edwards alleges that you retaliated against her when you gave her a fully successful rating. Is that true?
MS. DOUD: Objection.
A: No.
Q: You're saying that you didn't retaliate against her; is that right?
MS. DOUD: Objection.
A: I did not retaliate.

[10] Q: So now Ms. Edwards alleges that she was administrative officer during that time and you took all those functions away from her.
A: During what time?
Q: During the time you were her supervisor.
MS. DOUD: Objection.
MS. HAGAN: On what grounds?
MS.DOUD: That's not a question.
MS. HAGAN: I'm going to note again that Ms. Doud is engaging in improper objections.
MS. DOUD: I made an objection, and then you asked me the basis, and I said the basis was that you did not ask a question.
MS. HAGAN: Your objection is noted, and that is not permissible. And so I'm going to note that it is an impermissible objection.

[11] Q: Ms. Edwards alleges that you would not assign her any work; is that true?
MS. DOUD: Objection.
A: I don't know if she alleges that.
Q: No, I'm saying, I'm asking you if it's true that you would not assign her work.
MS. DOUD: Objection.
A: I don't think so.
Q: Okay, could you explain?
MS. DOUD: Objection.
Q: You said you don't think so.
A: I'm really confused. Can [you] restart that question again, please?
Q: Ms. Edwards alleges that you refused to assign her work; is that true?
MS. DOUD: Objection.
A: No.
Q: So what happened then?
MS. DOUD: Objection.
A: Again, I don't recall what she was doing, what I gave her or not gave her.
Q: But you're also saying that it's not true they you refused to do so?
A: I didn't say I'm not giving her work.
Q: So what did you say instead?

Beyond the number of objections at the Walls deposition, Plaintiff complains specifically about two other incidents: 1) counsel's objections during questioning about Mr. Walls's asthma, (*see* ECF 88-2 at 89-95 and 291-94), and 2) a break to consult with counsel when questioning turned to a reprimand of Mr. Walls that was unrelated to Plaintiff's complaint. (*See* ECF 88-2 at 125-29). With both areas of questioning, the witness, not counsel, expressed reservation about answering particular questions about his asthma treatment regimen and the "circumstances behind the reprimand" he received in 2014. (ECF 88-2 at 125). Even if those lines of questioning were relevant and appropriate, the Court has reviewed the Walls deposition and finds that Plaintiff was able to explore both issues with the witness and that the witness answered the questions posed, notwithstanding counsel's objections. *See Quinio v. Aala*, No. 15-cv-4912 (PKC) (SJB), 2017 WL 8646668, at *4 (E.D.N.Y. Dec. 21, 2017) (finding that even where "the instruction was not proper. . . the conduct is not sanctionable, in light of the fact that the question was answered, on that occasion and at other times during the deposition. Again, there was no material frustration or delay").

Specifically, the witness answered at least 19 distinct questions regarding his asthma history, with about half of them answered after counsel's colloquies about the relevance of the

---

MS. DOUD: Objection.
A: To what?
Q: What did you decide to do with Ms. Edwards?
MS. DOUD: Objection.
A: I don't remember.
Q: You mean to tell me that you supervised Ms. Edwards from November 2015 to August 2016, that Ms. Edwards filed a lawsuit, filed EEO complaints, and then after she stopped being a locksmith, you don't know what she was doing?
MS. DOUD: Objection.
A: I do not remember.
Q: You don't remember?
MS. DOUD: Objection.
A: Right.

line of questioning. *Id.* Similarly, after the witness asked if he had to answer questions regarding his reprimand, his counsel did take a break while a question was pending, but immediately identified the privilege concern as the reason for the break. *See* Local Civ. R. 30.4 (attorney may not initiate private conference with deponent while a question is pending, "except for the purpose of determining whether a privilege should be asserted"). After the witness returned, he answered no fewer than 20 questions regarding the circumstances surrounding his reprimand, even as the answers showed that the circumstances of that incident were not related to the complaint or plaintiff's allegations. (*See* ECF 88-2 at 125-29). Although Plaintiff claims that the witness was "clearly coached on what to say," (ECF 85 at 17), she does not suggest – nor is there any indication from the transcript – that the answers were untruthful or unclear in any way. (*Id*. at 17.)

## III. **CONCLUSION**

Most of the objections in both depositions were simply stated as "objection" or "objection to form." To the extent there was colloquy between counsel, the language used was civil, the objections were not made in bad faith, and the witness answered the questions, even in instances where the questions were not clear or counsel argued that the questions were not relevant. Plaintiff has not identified any objections or colloquy that, upon review, resulted in the

witness failing to answer a question that they should have answered. Accordingly, Plaintiff's motion for sanctions is denied.

**SO ORDERED.**

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge

Dated: New York, New York
November 12, 2019