UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOLLAREATHA EDWARDS,

               Plaintiff,

      v.

DENIS R. McDONOUGH, *Secretary of the Department of Veterans Affairs*,

               Defendant.

No. 16 Civ. 8031 (JSR) (OTW)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTIONS *IN LIMINE***

 

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2663/2679

REBECCA S. TINIO
JENNIFER JUDE
Assistant United States Attorneys
    - Of Counsel -

## PRELIMINARY STATEMENT

Defendant Denis R. McDonough, the Secretary of Veterans Affairs ("Defendant" or the "Government"),[1] by his attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of his motions *in limine*. As described further below, Defendant requests that the Court (i) exclude evidence not relevant to the claims remaining for trial, which pertain solely to Defendant's decision in 2015 not to permit Plaintiff to park in the Manhattan VA rear parking lot while it was under construction; and (ii) exclude any evidence regarding the calculation of backpay, front pay, and related benefits, which the jury will not be calculating.

## ARGUMENT

### I. LEGAL STANDARDS

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996 (internal quotation marks omitted); *see Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005); *see generally* Fed. R. Evid. 104. *In limine* motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

The Court may rely on the Federal Rules of Evidence and its own broad discretion in determining whether or not to exclude certain evidence at trial. *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2d Cir. 1984); *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Denis R. McDonough is automatically substituted as the defendant in this case.

1976). Ordinarily, evidence is admissible so long as it is relevant, meaning that it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action," Fed. R. Evid. 401, and not otherwise barred under the Rules, Fed. R. Evid. 402. The proponent of the evidence, however, bears the burden of establishing that it is admissible. *See Evans v. Port Auth. of New York & New Jersey*, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) ("The burden of establishing admissibility, of course, is with the proponent of the evidence.").

## II. THE COURT SHOULD EXCLUDE EVIDENCE THAT IS NOT RELEVANT TO PLAINTIFF'S CLAIMS RELATING TO THE 2015 PARKING DECISION

The Court should exclude any evidence, whether documentary or testimonial, that is not relevant to the three closely related claims that remain for trial, all of which pertain to the VA's denial in 2015 of Plaintiff's request to use the rear parking lot of the Manhattan VA campus while the lot was under construction (the "2015 parking decision"). Plaintiff has proposed numerous trial witnesses and exhibits that are entirely irrelevant to the narrow issues that will be put to the jury in this case. *See generally* Pretrial Consent Order. But "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402; *see also, e.g.*, *Kaufman v. Columbia Mem'l Hosp.*, No. 1:11-CV-667 MAD/CFH, 2014 WL 3888229, at *5 (N.D.N.Y. Aug. 7, 2014) (granting a motion *in limine* with respect to a document "not relevant to any of the claims or defense at issue in this trial").

### A. Only Three Claims Remain at Issue, All Pertaining to the 2015 Parking Decision

First, to the extent there may be a dispute on this point, Judge Swain's Memorandum Opinion and Order addressing Defendant's motion for summary judgment made clear that only three closely related claims survive to be tried, all relating to the 2015 parking decision. *See Edwards v. Wilkie*, No. 16 Civ. 8031 (LTS) (OTW), 2020 WL 2792997 (S.D.N.Y. May 29, 2020)

("SJ Op."). Judge Swain granted summary judgment to the Government on the following causes of action: (1) all claims relating to Plaintiff's telework requests, as they were not timely raised, *id.* at *7; (2) all claims of disability and gender discrimination arising from the alleged reassignment of some of Plaintiff's duties, Plaintiff's performance ratings, and the denial of Plaintiff's telework requests, *id.* at *10-12; (3) all of Plaintiff's retaliation claims, *id.* at *14; and (4) Plaintiff's hostile work environment claim, *id.* The remaining claims are: (1) Plaintiff's claim that the 2015 parking decision constituted an unlawful denial of a reasonable accommodation of her disability, *id.* at *8-9; (2) Plaintiff's claim that the 2015 parking decision resulted from discrimination on the basis of disability, *id.* at *11-12; and (3) Plaintiff's constructive discharge claim, also relating to the 2015 parking decision, *id.* at *14.

Plaintiff has suggested that a fourth claim remains to be tried: a hostile work environment claim somehow occasioned by the 2015 parking decision. Plaintiff is incorrect. Judge Swain explicitly held that no part of Plaintiff's hostile work environment claim could survive summary judgment, including the claim as it related to the 2015 parking decision: "The conduct Plaintiff identifies as hostile—the denial of her telework *and parking* requests and occasional exposure to noxious fumes—does not suffice to demonstrate that Plaintiff was subject to a workplace that was so 'permeated with discriminatory intimidation, ridicule, and insult' as to create a legally actionable hostile work environment." *Id.* (emphasis added). Moreover, Judge Swain specifically denied the Government's summary judgment motion *only* "as to Plaintiff's constructive discharge claim related to the denial of Plaintiff's parking request," and in explaining that ruling, cited only the constructive discharge, not the hostile work environment, standard with respect to the surviving claim. *Id.* In short, Judge Swain's Opinion and Order very

3

clearly identifies the only claim as to which summary judgment was *denied*: constructive discharge relating to the 2015 parking decision.  *See id.*[2]

### B. The Court Should Exclude the Testimony of Veronica Edwards, Erik Anderson, Ilan Fouks, Michelle Nelson, Martina Parauda, Tyrone Aull, and Joanne Turnier

Plaintiff has proposed presenting numerous witnesses at trial whose testimony would be irrelevant to Plaintiff's claims arising from the 2015 parking decision: Plaintiff's sister Veronica Edwards, and current or former VA employees Erik Anderson, Ilan Fouks, Michelle Nelson, Martina Parauda, Tyrone Aull, and Joanne Turnier (the "Challenged Witnesses").  Their testimony should be excluded.[3]

The 2015 parking decision was a narrow issue, with which only a handful of individuals were directly involved—as evidenced by the very limited number of documents embodying the decision, and by Plaintiff's own submissions during briefing of Defendant's motion for summary judgment.  Aside from photographs produced during discovery by both parties, which are not at issue in this motion, throughout this litigation, the parties have identified only a few documents relating to the 2015 parking decision: (1) an email sent by Plaintiff in December 2014 to Jackson Chin and Ralph Puma inquiring about parking, which Plaintiff then forwarded to a number of other individuals but to which Plaintiff has stated she never received any response from anyone

---

[2] Even if the Court were to conclude that Plaintiff's hostile work environment claim relating to the 2015 parking decision remained to be tried, that claim itself would not entail or justify the introduction of any evidence beyond what is relevant to the other three parking-related claims.  In other words, a hostile work environment claim relating to a one-time decision on Plaintiff's parking request would not function as a back door to the introduction of evidence not directly relevant to the lawfulness of that decision.

[3] The Government notes that Plaintiff's inclusion of these witnesses in her pretrial disclosures under Fed. R. Civ. P. 26(a)(3) is improper for the additional reason that she never identified them in initial disclosures under Fed. R. Civ. P. 26(a)(1) as individuals upon whom she might rely to support her claims or defenses; indeed, Plaintiff failed to make initial disclosures at all.  *See* ECF No. 174.

at the VA; (2) a June 2015 memorandum sent by Ralph Puma addressing the imminent closure of the rear parking lot; and (3) emails in July and August 2015 between Plaintiff, Jackson Chin, and Christopher Walls, in which Mr. Chin conveys the denial of Plaintiff's parking request. *See, e.g.*, ECF No. 140-33 (December 2014 emails); Declaration of Rebecca S. Tinio dated July 18, 2022 ("Tinio Dec.") ¶ 2, Ex. 1 (June 2015 Puma memo); ECF No. 140-34, at 2-3 (July and August 2015 emails); ECF No. 141 ("Pls. 56.1 Counter Statement") at 38-39 (noting that Plaintiff did not receive a response to her December 2014 emails regarding parking). In Plaintiff's submissions opposing summary judgment, Plaintiff repeatedly referred to Mr. Chin, Mr. Walls, and Jodie Jackson (Ms. Jackson testified in this matter that she established the VA's policy regarding parking in this particular lot during the period relevant to Plaintiff's claims) as the individuals with the most knowledge of and direct involvement in the 2015 parking decision. *See, e.g.*, Pls. 56.1 Counter Statement at 32-42; Tinio Dec. ¶ 3, Ex. 2 (excerpt of deposition of Jodie Jackson), at 251-52. Mr. Chin, Mr. Walls, and Ms. Jackson are all included on the Government's witness list (and Mr. Walls appears on Plaintiff's list as well) and will present testimony to the jury. In contrast, the testimony of the Challenged Witnesses would be irrelevant to the elements of Plaintiff's remaining claims regarding the 2015 parking decision.

    *Veronica Edwards*. Veronica Edwards is Plaintiff's sister. No evidence in this case suggests that Veronica Edwards works or has ever worked at the Manhattan VA, or that she has any personal knowledge of any of the events in this case, including the 2015 parking decision. Any testimony that Veronica Edwards might be able to offer regarding the parking decision, presumably gleaned from communications with Plaintiff, would be hearsay inadmissible pursuant to Federal Rule of Evidence 802. Plaintiff is an available witness who will be testifying live at the trial, and there is therefore no basis (or applicable hearsay exception) to permit

Plaintiff to introduce Veronica Edwards' testimony regarding any information she may have heard or learned via Plaintiff's out-of-court statements to her.  *See* Fed. R. Evid. 802 & 803.

If Plaintiff intends to elicit testimony from Veronica Edwards (or any former VA colleague, such as Erik Anderson, Ilan Fouks, Tyrone Aull, or Joanne Turnier) regarding Plaintiff's medical conditions or symptoms, that testimony would be: (1) duplicative of testimony that Plaintiff herself (and possibly other witnesses) will presumably present at trial; and (2) unnecessary, since the Government does not intend to challenge the medical documentation of Plaintiff's diagnosis of chronic asthma with allergic rhinitis, nor Plaintiff's (or any other witness's) subjective description of her symptoms relating to that diagnosis.  Furthermore, even if Veronica Edwards were permitted to testify about Plaintiff's medical condition and symptoms, she would not be able to offer direct, non-hearsay testimony about Plaintiff's experience of symptoms in and around her former workplace at the Manhattan VA.

To the extent Plaintiff may argue that a particular hearsay exception applies to Veronica Edwards's testimony, or that Veronica Edwards has personal knowledge of a relevant issue to be tried, Plaintiff should identify the exception and the particular statements she believes are admissible pursuant thereto, and/or the relevant topics.

*Erik Anderson and Ilan Fouks*.  Erik Anderson and Ilan Fouks are former employees at the Manhattan VA and former supervisors of Plaintiff.  Neither Mr. Anderson nor Mr. Fouks was Plaintiff's supervisor by December 2014, when Plaintiff made her first inquiry regarding parking in the rear lot while it was under construction, *see, e.g.*, Pls. 56.1 Counter Statement at 5-6; and neither Mr. Anderson nor Mr. Fouks was deposed in this matter or gave testimony in the underlying EEO proceeding.  No evidence in this case suggests that either Mr. Anderson or Mr. Fouks had any involvement in or direct knowledge of the 2015 parking decision, and their

6

testimony would therefore not be relevant to that issue. To the extent Plaintiff intends to offer their testimony on some other topic, for example Plaintiff's performance awards, promotions, job duties, or medical conditions, that evidence (to the extent it is relevant and not cumulative) may come in through certain documents included on Plaintiff's exhibit list (as to which Defendant has not interposed objections), and through Plaintiff's own testimony. In addition, Plaintiff's supervisor during the period relevant to the parking decision, Christopher Walls, will be testifying live at trial. At a minimum, Plaintiff should adequately disclose the topics with regard to which she intends to elicit testimony from Mr. Anderson and Mr. Fouks and identify record evidence substantiating any assertion that they possess direct knowledge of relevant issues.

*Michelle Nelson*. No evidence produced or elicited by either party in this matter indicates that Michelle Nelson, a former VA employee who worked in Human Resources, was involved in, or can provide any testimony relevant to the 2015 parking decision. Ms. Nelson has not given testimony either in this case or in the EEO proceeding, and she is referenced in Plaintiff's summary judgment opposition papers briefly, and only with respect to Plaintiff's first request in 2013 to telework. *See* Pls. 56.1 Counter Statement at 52. As noted above, Judge Swain dismissed all of Plaintiff's telework-related claims as untimely filed. *Edwards*, 2020 WL 2792997, at *7. At a minimum, Plaintiff should adequately disclose the topics with regard to which she intends to elicit testimony from Ms. Nelson and identify record evidence substantiating any assertion that she possesses direct knowledge of relevant issues.

*Martina Parauda*. During the period relevant to the 2015 parking decision, Ms. Parauda was the Director of the entire Manhattan VA. *See, e.g.*, Tinio Dec. ¶ 3, Ex. 2, at 198, 245. Ms. Parauda has not given testimony either in this case or in the EEO proceeding, and no evidence produced or elicited by either party indicates that Ms. Parauda was involved in the 2015 decision

7

not to allow Plaintiff to park in the Manhattan VA rear lot. In another submission, Plaintiff asserted, without citation to any evidence, that Ms. Parauda (as well as Tyrone Aull and Joanne Turnier, addressed separately below) "possess[es] first-hand knowledge about either: "[Plaintiff's] use of VA on-si[te] parking; the VA's policy or lack thereof surrounding on-si[te] parking; the VA's approach toward using on-si[te] parking; and or they took pictures of the various non-government, 'non-construction' vehicles parked on si[te]." ECF No. 177 at 1. And in opposition to Defendant's summary judgment motion, Plaintiff contended that Ms. Parauda, along with Plaintiff's VA supervisor Christopher Walls and then-VA Associate Director Jodie Jackson (both of whom will be presented by the Government live at trial), "made the determination about who was able to park in [the] rear parking lot." Pls. 56.1 Counter Statement at 59-60. But the actual evidence produced in this case belies any assertion that Ms. Parauda was involved in the 2015 parking decision.

      Plaintiff acknowledges that when she forwarded her December 2014 inquiry about parking (made to Jackson Chin and Ralph Puma) to a number of higher-level VA executives, including Ms. Parauda, Plaintiff received no response. *See* Pls. 56.1 Counter Statement at 38-39. In addition, Plaintiff's statement that Ms. Parauda "made the determination about who was able to park in [the] rear parking lot" relies solely on one excerpt from the deposition of Joanne Turnier (a non-supervisory co-worker of Plaintiff in the VA engineering department), who: (1) speculated as to what Mr. Walls "must have" told Ms. Parauda and others about Plaintiff's parking situation, and (2) explicitly "assum[ed] that they decided to come to a conclusion" with respect to parking in the rear lot of the Manhattan VA. *See* Pls. 56.1 Counter Statement at 59-60; ECF No. 140-9 (excerpt from the deposition of Joanne Turnier), at 83-84. Aside from these unsupported contentions regarding Ms. Parauda and the 2015 parking decision, Plaintiff referred

to Ms. Parauda in her summary judgment opposition only in connection with Plaintiff's dismissed telework claims. *See* Pls. 56.1 Counter Statement at 50, 55. As already noted above, the Government will present the testimony of multiple VA witnesses whom Plaintiff agrees were involved in or had knowledge of the 2015 parking decision. Ms. Parauda, who does not fall into that category, should not be compelled to testify at trial. At a minimum, Plaintiff should adequately disclose the topics with regard to which she intends to elicit testimony from Ms. Parauda and identify record evidence substantiating any assertion that she possesses direct knowledge of relevant issues.

*Tyrone Aull and Joanne Turnier*. Mr. Aull and Ms. Turnier were co-workers of Plaintiff in the Manhattan VA engineering department. No evidence produced or elicited by either party in this matter indicates that Mr. Aull and Ms. Turnier were involved in or could offer non-duplicative testimony regarding the 2015 parking decision. Mr. Aull did not give testimony either in this case or in the underlying EEO proceeding and was cited in Plaintiff's summary judgment opposition only sparingly, and in relation to some of Plaintiff's dismissed claims. Pls. 56.1 Counter Statement at 21, 23. As mentioned above, Plaintiff has also suggested, without citation to any evidence produced by either party, that Mr. Aull may have taken photographs of vehicles parked in the Manhattan VA rear lot. But Plaintiff has never produced in discovery any photographs purportedly taken by Mr. Aull, and she cannot introduce any such photographs, if they exist, at this late stage.

Similarly, no evidence in this case indicates that Ms. Turnier had any involvement in, or possesses any non-duplicative knowledge of, the 2015 parking decision. As noted above, while Ms. Turnier seems to have heard about the 2015 parking decision, she merely speculated in her deposition as to how the parking decision came about. *See* ECF No. 140-9, at 83-84. Ms.

9

Turnier's primary relevance to this case related to Plaintiff's dismissed gender discrimination claims.  *See, e.g.*, Pls. 56.1 Counter Statement at 13, 17.

To the extent Plaintiff intends to offer Mr. Aull's or Ms. Turnier's testimony on some other topic, for example Plaintiff's job duties or medical conditions, that evidence (to the extent it is relevant and not cumulative) may come in through certain documents included on Plaintiff's exhibit list (as to which Defendant has not interposed objections), and through Plaintiff's own testimony.  At a minimum, Plaintiff should adequately disclose the topics with regard to which she intends to elicit testimony from Mr. Aull and Ms. Turnier and identify record evidence substantiating any assertion that they possess direct knowledge of relevant issues.

Because, following Judge Swain's rulings on summary judgment, the only claims remaining for trial pertain exclusively to the 2015 parking decision, the Court should exclude evidence not relevant to that narrow issue.[4]

### III. THE COURT SHOULD EXCLUDE ANY EVIDENCE REGARDING THE CALCULATION OF BACKPAY, FRONT PAY, AND RELATED BENEFITS

The Court also should preclude any evidence offered during the trial regarding Plaintiff's claims for backpay, front pay, related benefits, or prejudgment interest.  These are equitable matters that the Court, not the jury, decides and they should be reserved unless and until there is a liability determination.

The law of this circuit is clear that "[b]ecause a lost wages award—whether in the form of back pay or front pay—is an equitable remedy, a party is generally not entitled to a jury

---

[4] The Court should also exclude Plaintiff's proposed exhibits that relate only to Plaintiff's dismissed telework claims.  The Government has provided Plaintiff with its objections to each of these exhibits and others, but in sum, the exhibits that the Government asserts should be excluded on this ground are Pl. Exs. 24-26, 36 (last two pages), 49, and 52-53.  In addition, Plaintiff's Exhibit 54 appears to relate to an EEO complaint by another individual and should also be excluded on relevance grounds.

determination on the question." *Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005) (citation and emphasis omitted).[5] The Court should therefore preclude Plaintiff from introducing any evidence before the jury regarding backpay, front pay, or other benefits, as such evidence has no probative value as to any issue before the jury and rather may confuse the jury and waste time. *See* Fed. R. Evid. 401, 403; *Morse v. JetBlue Airways Corp.*, No. 09-CV-5075 KAM MDG, 2014 WL 2587576, at *5 (E.D.N.Y. June 9, 2014) (granting defendant's motion *in limine* to exclude evidence about back pay and front pay where plaintiff was not entitled to those categories of damages); *Hannah v. Wal-Mart Stores, Inc.*, No. 3:12-CV-01361 (VAB), 2017 WL 690179, at *4 (D. Conn. Feb. 21, 2017), *aff'd sub nom. Hannah v. Walmart Stores, Inc.*, 803 F. App'x 417 (2d Cir. 2020) ("The Court will not permit a jury determination of lost wages, and it will limit the presentation of evidence accordingly.").[6]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant his motions *in limine* in full.

---

[5] Although *Broadnax* is a Title VII case, "[t]he remedies . . . set forth in . . . Title VII apply to federal employees seeking relief for disability discrimination under the Rehabilitation Act." *Colon v. Potter*, 51 F. App'x 43, 46 (2d Cir. 2002) (citing 29 U.S.C. § 794a(a)(1)); *see Shavuo v. Shinseki*, No. 1:10 C 2914 MEA, 2013 WL 1335645, at *5 (S.D.N.Y. Apr. 3, 2013) (applying *Broadnax* to preclude lost wages evidence in trial of federal employee's Rehabilitation Act claims).

[6] In the event that the jury finds in Plaintiff's favor on liability, the Government expects to argue that she is not entitled to backpay or front pay during her period of disability. *See Morse v. Jetblue Airways Corp.*, No. 09-CV-5075 (KAM)(MDG), 2014 WL 2587576, at *5 (E.D.N.Y. June 9, 2014).

Dated: New York, New York
       July 18, 2022

                                      Respectfully submitted,

                                      DAMIAN WILLIAMS
                                      United States Attorney for the
                                      Southern District of New York

By:    /s/ *Rebecca S. Tinio*
              REBECCA S. TINIO
              JENNIFER JUDE
              Assistant United States Attorneys
              86 Chambers Street, 3rd Floor
              New York, New York 10007
              Telephone: (212) 637-2774/2663
              E-mail: rebecca.tinio@usdoj.gov
                            jennifer.jude@usdoj.gov